UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT BACON,

       Petitioner,

v.                              Case No: 2:13-cv-804-FtM-29CM

PAM BONDI,

       Respondent.
_____

## OPINION AND ORDER

### I.  Status

Petitioner Robert Bacon (hereinafter "Petitioner," "Bacon," or "Defendant") initiated this action proceeding *pro se* by filing a timely 28 U.S.C. § 2254 petition for writ of habeas corpus (Doc. #1, "Petition") and Memorandum of Law (Doc. #2, "Memorandum") challenging his judgment and conviction of DUI manslaughter and leaving the scene of an accident involving death entered in the Twentieth Judicial Circuit Court in Collier County, Florida.

Respondent filed a Response (Doc. #16, Response) opposing all grounds and attached supporting exhibits (Doc. #17, Exhs. 1-15; Doc. #27, Supp. Exh. 16-17) consisting of the record on direct appeal and the postconviction record. *Inter alia*, Respondent argues that Petitioner has not satisfied 28 U.S.C. § 2254(d)(1)-

(2).[1]  Petitioner filed a Reply (Doc. #31) and also attached an exhibit (Doc. #32-1) consisting of the postconviction court's order denying his Rule 3.850 motion, which Respondent previously submitted.

For the reasons that follow, the Court denies the Petition.

## II.  Applicable § 2254 Law

### A.  Deferential Review Required By AEDPA

Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Abdul-Kabir v. Quarterman, 550 U.S. 233, 246 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001).  Consequently, post-AEDPA law governs this action.  Abdul-Kabir, 550 U.S. at 246; Penry, 532 U.S. at 792; Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007).

Under the deferential review standard, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in

---

[1] Respondent states that the Petition is timely filed. Response at 10, n.1.

> light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).  Cullen v. Pinholster, ___ U.S. ___, 131 S.
Ct. 1388, 1398 (2011).  "This is a difficult to meet, and highly
deferential standard for evaluating state-court rulings, which
demands that the state-court decisions be given the benefit of the
doubt."  Id. (citations omitted).  See also Harrington v. Richter,
___ U.S. ___, 131 S. Ct. 770, 786 (2011) (pointing out that "if [§
2254(d)'s] standard is difficult to meet, that is because it was
meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly
interpret what is meant by an "adjudication on the merits."
Childers v. Floyd, 642 F.3d 953, 967-68 (11th Cir. 2011).  Thus,
a state court's summary rejection of a claim, even without
explanation, qualifies as an adjudication on the merits that
warrants deference by a federal court.  Id.; see also Ferguson v.
Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Indeed, "unless
the state court clearly states that its decision was based solely
on a state procedural rule [the Court] will presume that the state
court has rendered an adjudication on the merits when the
petitioner's claim 'is the same claim rejected' by the court."
Childers v. Floyd, 642 F.3d at 969 (quoting Early v. Packer, 537
U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." Thaler v. Haynes, ___ U.S. ___, 130 S. Ct. 1171, 1173 (2010); see also Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)) (recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision). "A state court decision involves an unreasonable application of federal law when it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Ponticelli v. Sec'y, Fla. Dep't of Corr., 690 F.3d 1271, 1291 (11th Cir. 2012) (internal quotations and citations omitted). The "unreasonable application" inquiry requires the Court to conduct the two-step analysis set forth in Harrington v. Richter, 131 S. Ct. at 770. First, the Court determines what arguments or theories support the state court decision; and second, the Court must determine whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior" Supreme Court decision. Id. (citations

omitted).   Whether a court errs in determining facts "is even more deferential than under a clearly erroneous standard of review." Stephens v. Hall, 407 F.3d 1195, 1201 (11th Cir. 2005).   The Court presumes the findings of fact to be correct, and petitioner bears the burden of rebutting the presumption by clear and convincing evidence.   28 U.S.C. § 2254(e)(1).

The Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits."   Cullen, 131 S. Ct. at 1398.   Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order.   Id.

**B.  Federal Claim Must Be Exhausted in State Court**

Ordinarily, a state prisoner seeking federal habeas relief must first "'exhaus[t] the remedies available in the courts of the State,' 28 U.S.C. § 2254(b)(1)(A), thereby affording those courts 'the first opportunity to address the correct alleged violations of [the] prisoner's federal rights.'"   Walker v. Martin, 562 U.S. 307, 316 (2011) (quoting Coleman v. Thompson, 501 U.S. 722, 731 (1991)).   This imposes a "total exhaustion" requirement in which all of the federal issues must have first been presented to the state courts.   Rhines v. Weber, 544 U.S. 269, 274 (2005). "Exhaustion requires that state prisoners must give the state courts one full opportunity to resolve any constitutional issues

by invoking one complete round of the State's established appellate review process.   That is, to properly exhaust a claim, the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010) (citing O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) and Castile v. Peoples, 489 U.S. 346, 351 (1989)).

To fairly present a claim, a petitioner must present the *same* federal claim to the state court that he urges the federal court to consider.   A mere citation to the federal constitution in a state court proceeding is insufficient for purposes of exhaustion. Anderson v. Harless, 459 U.S. 4, 7 (1983).   A state law claim that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Duncan v. Henry, 513 U.S. 364, 366 (1995) (per curiam).   "'[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'" McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) (quoting Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004)).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001), cert. denied, 534 U.S. 1136

(2002).   Under  the  procedural  default  doctrine,  "[i]f  the petitioner has failed to exhaust state remedies that are no longer available,  that  failure  is  a  procedural  default  which  will  bar federal habeas relief . . . . ."  Smith, 256 F.3d at 1138.   A procedural  default  for  failing  to  exhaust  state  court  remedies will  only  be  excused  in  two  narrow  circumstances.   First,  a petitioner  may  obtain  federal  habeas  review  of  a  procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error.  House v. Bell, 547 U.S. 518, 536-37 (2006); Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008).  Second, Petitioner would have to show a fundamental miscarriage of justice.

### C.  Ineffective Assistance of Counsel

Ineffective  assistance  of  counsel  claims  are  reviewed  under the  standards  established  by  28  U.S.C.  §  2254(d).   Newland v. Hall,  527  F.3d  1162,  1183  (11th  Cir.  2008).   Post-AEDPA,  the standard  set  forth  in  Strickland v. Washington,  466  U.S.  668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case.  Newland, 527 F.3d at 1184.   In Strickland,  the  Supreme  Court  established  a  two-part  test  to determine whether a convicted person is entitled to habeas relief on  the  grounds  that  his  or  her  counsel  rendered  ineffective assistance: (1) whether counsel's representation was deficient,

i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688; see also Bobby Van Hook, 558 U.S. 4, 8, 130 S. Ct. 13, 16 (2009); Cullen v. Pinholster, 131 S. Ct. at 1403 (2011)

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." Bobby Van Hook, 130 S. Ct. at 17 (internal quotations and citations omitted). It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland,

466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny.  Id.  A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  An attorney is not ineffective for failing to raise or preserve a meritless issue.  Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client").  "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"  Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

### III.  Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court.  Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007).  Petitioner does not proffer any evidence that would require an evidentiary hearing, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the

record before the Court.  Schriro, 550 U.S. at 474; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

### A.  Ground One

Petitioner first argues that the trial court erred by denying his motion to suppress.  Petition at 5; Memorandum at 2-8. Petitioner explains that an eyewitness in this case, Carlos Diaz, testified that on February 11, 2008, at around 11:00 p.m. he was driving alone in his vehicle going south on U.S. 41 to pick up his brother from work.  He past two bicyclists, one of whom had a flashing light.  After he passed the bicyclists, Diaz looked in his rearview mirror and saw a black truck get close to the bicyclists and then one of the truck's headlights went out.  The truck then passed Diaz's vehicle.  Diaz caught up with the truck stopped at an intersection and wrote down the tag number.  After Diaz picked-up his brother at work, Diaz drove back by the accident scene and stopped to tell police what he had witnessed.  Diaz was then taken to a home in Naples Park.  Once at the Naples Park home, Petitioner claims that Diaz saw him in handcuffs and in a spot light.  Additionally, Petitioner contends that he was placed in the back seat of the police car.  Diaz identified Petitioner as the driver of the truck he saw.  Diaz did not subsequently identify Petitioner in court.  Instead, Petitioner claims that

Deputy Boliak testified that another officer had stated that Diaz identified him on the evening of the incident.  Id. at 4.

Petitioner contends the out-of-court identification procedure was unduly suggestive and impermissible.  Citing "Simmons v. U.S.,"[2] Petitioner argues that the trial court did not make a factual finding regarding the first prong of Simmons, i.e. whether the identification was tainted or highly suggestive, and instead only addressed the second prong of Simmons, ultimately finding that the totality of the circumstances did not give rise to a substantial likelihood of misidentification.  Petitioner submits that the trial court's finding was erroneous because Diaz could not identify Petitioner as the driver, even when he was presented in a different perspective involving being placed in police car and viewed through rear-view mirror, or with a hat placed on his head to match the description of the driver.  Id. at 7.  Instead, Petitioner argues Diaz only became certain of the identification during the suppression hearing.  Id.

In Response, Respondent acknowledges that Petitioner exhausted Ground One by raising this claim in his motion to

---

[2] Petitioner's cite is incorrect.  Simmons is actually a Florida Supreme Court, not a United States Supreme Court case, and was relied upon in the trial court's order to deny Petitioner's motion to suppress.  See Exh. 17 (citing Simmons v. State, 934 So.2d 1100, 1118 (Fla. 2006).

suppress with the trial court and on direct appeal.  Response at 12.  Respondent argues that Ground One is barred by the Stone[3] doctrine because Petitioner had a full and fair opportunity to develop this claim before the State court.  Response at 12.  Respondent reviews the testimony provided at the pre-trial hearing on the motion to suppress and notes that the trial court denied Bacon's motion.  Id. at 14 (citing Exh. 10e at 169-195 hearing transcript); see also Doc. #32 (referencing Exhs. 16-17 (trial court order denying Bacon's motion to suppress)).[4]

The Court agrees with Respondent that Petitioner has exhausted Ground One by raising the issue at the trial court in a motion to suppress, which the trial court denied, and then on direct appeal.  However, the Court does not find that Ground One is barred by Stone v. Powell, 428 U.S. 465 (1976).  In Stone, the United States Supreme Court held:

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial.  In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is

---

[3] Stone v. Powell, 428 U.S. 465 (1976).

[4] In the Response, Respondent inadvertently cites Exh. 10c as the trial court's order denying Bacon's motion to suppress.  The trial court's order denying the motion to suppress is located at a supplemental appendix, Exh. 17.  See Doc. #32.

> minimal, and the substantial societal costs of
> application of the rule persist with special
> force.

Id. at 494-95 (footnotes omitted).   Here, Petitioner does not bring a Fourth Amendment challenge.   Instead, Petitioner challenges the out-of-court identification as unduly suggestive and a violation of his right to due process under the Fourteenth Amendment.   Petition at 5.   Thus, Respondent is incorrect to assert that Stone bars such a claim from habeas review.   See Stovall v. Denno, 388 U.S. 293 (1967), abrogated on other grounds, Harper v. Virginia Dep't of Taxation, 509 U.S. 86 (1993) (holding that an unnecessarily suggestive pre-indictment identification could violate due process and was presented in the context of habeas corpus proceedings); see also Kimmelman v. Morrison, 477 U.S. 365, 374-75 (1986)(finding a claim that a petitioner's defense attorney was incompetent in connection with a motion to suppress was subject to review in a habeas action); Withrow v. Williams, 507 U.S. 680, 687 (1993) (finding Stone bar did not restrict exercise of federal habeas jurisdiction on a claim that a petitioner's conviction rests on statements obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966)).

Nevertheless, Petitioner's Ground One remains subject to the AEDPA standards of review set forth in 28 U.S.C. § 2254(d) as discussed above because the trial court issued an order denying

Petitioner's motion to suppress.  In other words, this Court's task is to determine whether, in admitting the out-of-court identification, the state courts' adjudication was contrary to clearly established federal law, an unreasonable application thereto, or based on an unreasonable determination of the facts. When this Court is tasked with evaluating the constitutionality of an out-of-court identification:

> First, we must determine whether the original identification procedure was unduly suggestive. Dobbs v. Kemp, 790 F.2d 1499, 1506 (11th Cir. 1986), modified in part on other grounds, 809 F.2d 750 (11th Cir.), cert. denied, ____ U.S. _____, 107 S. Ct. 2203 (1987).  If we conclude that the identification procedure was suggestive, we must then consider whether, under the totality of the circumstances, the identification was nonetheless reliable.  See Neil v. Biggers, 409 U.S. 188, 199 (1972), Dobbs, 790 F.2d at 1506.  This second stage involves consideration of five factors identified by the Supreme Court in Neil v. Biggers: opportunity to view, degree of attention, accuracy of the description, level of certainty, and length of time between the crime and the identification.

409 U.S. at 199.  This is essentially the standard the trial court used in denying Petitioner's motion to suppress.

Petitioner contends the trial court did not make a finding as to the first element of Simmons, i.e. whether the identification was tainted or highly suggestive, but the record shows the trial judge discussed the matter and the ruling in fact favored

Petitioner with respect to that portion of the test. Specifically, the trial court noted that "it was unclear whether all show-up identification are inherently unnecessarily suggestive, or whether that is a factual issue to be determined by a court." Exh. 17 at 44. The trial court then went on to presume that all show-up identifications are unnecessarily suggestive, but proceeded to address the second prong of the test consisting of several factors to determine that misidentification in this case was not likely. Id. at 44-45. The factors the trial court considered are the same factors set forth in Neil v. Biggers, 409 U.S. at 199. Thus, the trial court identified the correct governing legal principles. Petitioner is only entitled to relief if he can point to a materially indistinguishable Supreme Court case in which the Supreme Court excluded an out-of-court identification; if he can show that the state court's adjudication was an objectively unreasonably application of clearly established Supreme Court case law; or, if he can show that the decision was an objectively unreasonable determination of the facts. Petitioner Bacon has not done so.

In the order denying Petitioner's motion to suppress, the trial judge noted that Diaz's show-up identification of Bacon as the driver occurred only about 1 to 1 1/2 hours after the incident occurred. Based on testimony from Diaz, the judge found that Diaz

had ample opportunity to view Bacon.  The judge noted that Diaz drove past two bicycles on US 41 in Collier County Florida.  Diaz took special note of the bicyclists traveling on the bike path because of the flashing light on one bike.  He continued to view the bicyclists in his rear-view mirror and witnessed a black truck approaching them and then the truck's right-headlight winked out. Diaz was alerted to pay attention to the driver of the black truck by this event.  The black truck then passed Diaz and he wrote down the license plate number.  As Bacon, who was the driver of the black truck, and Diaz stopped at an intersection, Diaz got a good view of the driver's profile.  Diaz testified that the intersection was well illuminated.  The trial judge found Diaz's degree of attention was significant having witnessed what he suspected was the truck that hit the bicyclists.  Diaz gave an accurate description of Bacon to police officers prior to the show-up identification.  There was no testimony or evidence that Bacon looked different than the description Diaz provided to law enforcement.  The judge noted that both Diaz and Sergeant Humann testified that Diaz was not 100% certain of his identification of Bacon when Diaz viewed Bacon facing forward, but he was 80 or 90% sure.  Once Bacon turned so Diaz could see his profile, Diaz was 100% certain with his identification.  Based on the foregoing, the

trial court found the procedure used in this case did not give rise to a substantial likelihood of misidentification.

Petitioner does not demonstrate that the suppression hearing conducted by the trial court and the review of trial court's conclusions by the appellate court resulted in a decision contrary to or an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts based on the evidence presented. The suppression hearing transcript supports the trial court's findings. See generally Exh. 10e. In fact, the trial judge was generous to Petitioner in finding that the out-of-court identification occurred one hour to one and a half hours following the crime when testimony also supported a finding that the identification happened less than 30 minutes, or no more than one hour following the crime. Exh. 10e at 180, 184. Petitioner's allegations that Diaz could not identify him during the identification are unequivocally refuted by the record. Accordingly, Petitioner is denied relief on Ground One.

**Ground Two**

Ground Two contains three sub-parts. Petitioner argues that his trial counsel rendered ineffective assistance of counsel in violation of the Sixth Amendment when counsel failed to object to the introduction of prejudicial hearsay testimony. Petition at 2. Petitioner's supporting memorandum expounds on this claim

generally asserting that counsel failed to object to Deputy Boliak's testimony concerning three matters that ultimately "bolstered the State's case on the disputed issue of identity." Memorandum at 10.

Petitioner first takes issue with officer Boliak's testimony that Boliak asked Bacon's roommate, Dawn Clements, to bring him the hat that Bacon wore earlier that evening.  Boliak testified that Clements brought him the hat, and it was used to assist eyewitness Diaz in identifying Bacon as the driver wearing the hat.  Petitioner asserts that Clements testified only as a rebuttal witness and did not talk about the hat and was not cross-examined about the hat.  Id.  Petitioner contends this constituted prejudicial hearsay testimony to which counsel failed to object.

In Response, Respondent acknowledges Ground Two is exhausted to the extent Petitioner raised the claims in his Rule 3.850 motion and appealed the postconviction court's denial therefrom. Response at 19.  Referring to the postconviction court's order denying Petitioner relief on his claim, Respondent argues that Petitioner cannot satisfy the Strickland test because the postconviction court determined that the record refuted Petitioner's claims.

The Court agrees with Respondent and finds Ground Two is exhausted to the extent Petitioner raised this claim in his Rule

3.850 motion, identified by the postconviction court as grounds
1a, 1b, and 1c, and appealed the trial court's denial therefrom.
In denying Petitioner relief on this claim, the postconviction
court cited Strickland and found in pertinent part as follows:

> As for Ground 1a . . .[t]he record reflects
> that Corporal Boliak had information that the
> driver of the truck involved in the criminal
> incident was male, wore a baseball cap, and
> that Corporal Boliak observed Defendant at his
> residence and noticed that Defendant's hair
> gave the appearance that he had recently worn
> a hat. (T. 232, 371, 264-67). Additionally,
> the eyewitness that was able to write down and
> report the driver's automobile tag number to
> law enforcement authorities, testified that he
> saw the profile of the driver and that the
> driver was wearing a dark baseball cap. (T.
> 231-32). The eyewitness identified the truck
> at Defendant's residence as the same truck
> involved in the criminal incident earlier the
> same night. (T. 234). Additionally, the
> record reflects that trial counsel objected to
> the prosecuting attorney's questions of
> Corporal Boliak regarding the request of
> Defendant's roommate to bring him the hat
> Defendant was wearing that day (T. 266).
> Notably, the Court sustained trial counsel's
> objection as having no foundation to the line
> of questions to Corporal Boliak at the time of
> the testimony (T. 266). Based on a review of
> the above referenced trial transcript, the
> Court finds that even if Corporal Boliak's
> trial testimony amounted to inadmissible
> hearsay and trial counsel were found to be
> ineffective for failing to object to Corporal
> Boliak's trial testimony that he requested
> Defendant's female roommate to bring him the
> hat Defendant was wearing on the day of the
> criminal incident and she brought him a hat,
> Defendant cannot demonstrate that there was a
> reasonable probability that, but for counsel's

> errors the result of the proceeding would have
> been different.   Therefore, even if trial
> counsel's performance was deficient as alleged
> in Defendant's Ground 1a, trial counsel cannot
> be found to have been ineffective because
> Defendant cannot demonstrate prejudice
> pursuant to Strickland.   Accordingly, Ground
> 1a is hereby denied.

Exh. 10g at 3-5.

The Court finds that the State courts' decisions were neither contrary to, nor an unreasonable application of Strickland.   Nor did the postconviction court's decision amount to an unreasonable determination of the facts based on the evidence presented.   The postconviction court applied the Strickland standard to Petitioner's claim of ineffective assistance of counsel.   The postconviction court reasonably determined that counsel did not render deficient performance based on failure to object to Clements' hat testimony, which caused Petitioner prejudice, because counsel did in fact object on other grounds, and the trial court sustained the objection.   Additionally, the postconviction court determined Petitioner could not show prejudice considering there was eyewitness testimony that identified Petitioner's truck as the vehicle the eyewitness saw hit the bicyclist and further identified Petitioner as the driver.   Accordingly, Petitioner is denied relief on Ground Two sub-claim a.

Next, Petitioner takes issue with officer Boliak's testimony that immediately after placing the hat on Bacon's head, Diaz identified him as the driver of the truck who was involved in the accident.  Memorandum at 11.  Petitioner argues that Boliak had no personal knowledge of Diaz's identification and only learned about the identification through another officer.  Id.

The postconviction court entered an order denying Petitioner relief finding as follows:

> A review of the trial transcript reveals that Corporal Boliak never testified as to any statement made by anyone else regarding the eye witness's ability to identify Defendant after placing the hat on his head. (T. 268). Rather, Corporal Baliok only testified as to his knowledge that the eye witness identified Defendant and that another officer informed him that the eye witness was able to identify Defendant (T. 268).  Accordingly, the claims asserted by Defendant in Ground 1b are without merit. Based on a review of the above referenced trial transcript, the Court finds that even if Corporal Boliak's trial testimony amounted to inadmissible hearsay and trial counsel were found to be ineffective for failing to object to Corporal Boliak's trial testimony that Defendant was identified as the driver once a hat was placed on Defendant's head, Defendant cannot demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.

Exh. 10g at 5-6 (emphasis added).

The Court finds that the State courts' decisions were neither contrary to, nor an unreasonable application of Strickland.  Nor

- 21 -

did the postconviction court's decision amount to an unreasonable determination of the facts based on the evidence presented. The postconviction court applied the <u>Strickland</u> standard to Petitioner's claim of ineffective assistance of counsel. The postconviction court reasonably determined that counsel performance did not cause Petitioner prejudice because the record showed that Corporal Baliok did <u>not</u> testify as Petitioner claimed he did, <u>i.e.</u> that "immediately after placing the hat on Bacon's head, Diaz identified him as the driver of the truck who was involved in the accident." Boliak testified regarding his own knowledge of Diaz's identification of Petitioner Bacon as the driver. Accordingly, Petitioner is denied relief on sub-claim b of Ground Two.

Third, Petitioner contends that "Boliak testified that Clements told him how long Bacon had been home before the police arrived, along with 'other information'." Memorandum at 11. Petitioner contends Clements testified that she went to bed and didn't know what time Bacon arrived home so the causal link between Bacon's arrival at the residence and the time of the crash was only introduced through Boliak's hearsay testimony. <u>Id.</u>

In denying Petitioner relief on this claim, the postconviction court found as follows:

The record reflects that Corporal Boliak testified that Defendant's roommate had provided him with information regarding the amount of time that Defendant had been home prior to law enforcement's arrival at the residence. (T. 269). Corporal Boliak did not testify as to what this information was nor anything that was said by Defendant's roommate. Corporal Boliak testified that based upon the information obtained from Defendant's roommate, he believed that they had found the driver of the vehicle from the criminal incident (T. 269-70). Based on a review of the above referenced trial transcript, the Court finds that the referenced trial testimony of Corporal Boliak concerning his questioning the roommate as to how long Defendant had been at the residence before police arrived, does not rise to the level of hearsay by inescapable inference. However, even if the referenced trial testimony of Corporal Boliak were hearsay by inescapable inference, Defendant cannot demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Therefore, even if trial counsel's performance was deficient as alleged in Defendant's Ground 1c, trial counsel cannot be found to have been ineffective because Defendant cannot demonstrate prejudice under Strickland.

Exh. 10g at 6-7.

The Court finds that the State courts' decisions were neither contrary to, nor an unreasonable application of Strickland. Nor did the postconviction court's decision amount to an unreasonable determination of the facts based on the evidence presented. The postconviction court applied the Strickland standard to

Petitioner's claim of ineffective assistance of counsel. The postconviction court reasonably determined that Boliak's testimony concerning the time Bacon arrived home, which he learned from Clements, did not constitute hearsay testimony. Thus, the postconviction court reasonably determined that defense counsel could not be deemed ineffective under the Sixth Amendment for failing to raise a meritless motion. Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to raise a non-meritorious motion). Additionally, the postconviction court noted counsel's performance did not cause Petitioner prejudice. Accordingly, Petitioner is denied relief on sub-claim c of Ground Two.

**Ground Three**

Petitioner challenges the verdict form used in his case and submits that the general verdict form violated his Due Process rights. Petition at 8. Specifically, Petitioner alleges that he was charged in a two-count information with leaving the scene of an accident under Florida Statute § 316.027. Memorandum at 14. Petitioner states that the statue provides that leaving the scene of an accident involving injury is a third-degree felony, whereas leaving the scene of an accident involving death is a first-degree felony. Id. According to Petitioner, the information alleged both injury and death in the alternatives. The jury returned a

general verdict of leaving the scene of a crash involving death or injury.   Petitioner argues that as a result, the verdict only supports a conviction of the lesser third-degree offense and the related sentence not to exceed five years imprisonment.

In Response, Respondent initially argues that any issue concerning the verdict form concerns a matter of state law for which federal habeas corpus relief is not available.  Response at 33.   Alternatively, Respondent argues that Petitioner did not exhaust the federal dimension of his claim before the State court and consequently Ground Three is now procedurally defaulted. Id. at 34.  Moreover, Respondent points out that Petitioner agreed to the general verdict form at trial and did not object to the form, which was necessary to preserve any alleged error.  Id. at 34, n. 11.  Turning to the merits, Respondent argues that the verdict form revealed in count one that the jury flatly rejected Petitioner's hypothesis of innocence that he was not driving his truck at the time the victim was struck and killed, finding him guilty of DUI manslaughter.  Id. at 36 (citing Exh. 10b at 18).

Contrary to Respondent's arguments that Ground Three raises only an issue with State law for which federal habeas relief does not lie, Petitioner raises a federal due process challenge and cites to Yates v. U.S., 354 U.S. 298 (1957) and Apprendi v. New Jersey, 530 U.S. 466 (2000) in support of his claim.  However, the

Court agrees with Respondent that the claim is not exhausted and is now procedurally defaulted.

As discussed above, a claim may be procedurally defaulted when a state court correctly applies a procedural default principle of state law and concludes that the petitioner's federal claims are barred in its order dismissing the petitioner's postconviction claim.  Bailey v. Nagle, 172 F.3d 1299, 1302-1303 (11th Cir. 1999). When a state court makes this determination, the federal court must determine whether the last state court rendering judgment "clearly and expressly" stated that its judgment rested on a procedural bar.  Id.  Second, a claim may be procedurally defaulted when a petitioner never raised the claim in state court and it is obvious that the unexhausted claim would now be procedurally defaulted in state court.  Id. at 1303.

A procedural default for failing to exhaust state court remedies will only be excused in one of two narrow circumstances. First, Petitioner may obtain review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting therefrom.  House, 547 U.S. 518, 536-537 (2006); Mize, 532 F.3d at 1190.  Second, Petitioner would have to show a fundamental miscarriage of justice.

To establish cause for a procedural default, Petitioner "must demonstrate that some objective factor external to the defense

impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999).  To show prejudice, Petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions.  United States v. Frady, 456 U.S. 152 (1982).  In other words, he must show at least a reasonable probability of a different outcome.  Henderson v. Campbell, 353 F.3 d 880, 892 (11th Cir. 2003).

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Carrier, 477 U.S. at 495-96.  A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent.  Schlup v. Delo, 513 U.S. 298, 327 (1995). This exception requires a petitioner's "actual" innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).  To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error.  Schlup, 513 U.S. at 327.

In Petitioner's Rule 3.850 motion, he did not alert the State court to any federal dimension of this claim.  Instead, Petitioner argued that the he received an illegal sentence due to the non-specific verdict form.  Exh. 9.  The State responded accordingly and argued that the verdict form indicated that the jury found Petitioner guilty on count one of DUI Manslaughter.  Exh. 10 at 4.  The State further responded that the jury instructions read to the jury were in accordance with the Standard Florida Jury Instructions, which did not require the jury to make a specific finding as to whether the crash involved death or injury.  Id. Due to Petitioner's failure to raise the federal dimension of his claim before the State courts, Petitioner failed to exhaust Ground Three.  Bailey, 172 F.3d at 1302.  Consequently, Ground Three is now procedurally defaulted under Florida law.  Petitioner has not established cause, prejudice, or a fundamental miscarriage of justice to overcome the procedural bar.

Alternatively, Petitioner is denied relief on the merits of Ground Three.  Petitioner's defense attorney did not object to the verdict form.  Thus, this Court reviews for plain error when there is no objection to the verdict form before the jury retires to deliberate.  United States v. Davis, 841 F.3d 1253, 1260 (11th Cir. 2016) (citing Fed. R Crim. P. 30(d); see, e.g., United States v. Mitchell, 146 F.3d 1338, 1342 (11th Cir. 1998) ("Because [the

defendant] did not raise objections to the [verdict form] we review . . . for plain error.")).  To show plain error, a defendant must show that: (1) an error existed, (2) it was plain, (3) the error effected his substantial rights, and (4) it seriously affected the fairness, integrity or public reputation of the judicial proceedings.  Id. at 1260-61.  Petitioner has shown no error with the verdict form in this case, much less an error that affected his substantial rights or the integrity of the proceedings.

The verdict form provided the jury with three options under count one: (a) The defendant is guilty of DUI Manslaughter; (b) The defendant is guilty of the lesser included offense of Driving While Under the Influence; and (c) The defendant is not guilty. Exh. 3.  The jury checked beside option (a) finding Petitioner Bacon guilty of DUI Manslaughter.  The trial judge properly instructed the jury regarding the DUI manslaughter count.  The jury understood that if they did not believe Petitioner caused the death of the victim, then they could find Petitioner guilty of driving while under the influence, or not guilty.  See Exh. 3 (verdict form); Exh. 10c at 343-344 (jury instructions).  The verdict form properly coincided with the Information that charged Petitioner with DUI manslaughter.  Undisputed evidence presented at trial supported the finding that the victim was killed from the incident, not merely injured.  The jury weighed the evidence and

evidently found the witnesses' testimony more credible than Petitioner's testimony that he did not drive his vehicle on the night of the incident.  Because Petitioner has not shown any error with the verdict form, Petitioner is, in the alternative, denied relief on the merits of Ground Three.

**Grounds Four and Six**

In Grounds Four and Six, Petitioner raises ineffective assistance of defense counsel claims related to counsel's alleged failure to move for a judgment of acquittal.  The Court will address Grounds Four and Six together because the underlying portion of these <u>Strickland</u> claims concern sufficiency of the evidence.

In Ground Four, Petitioner argues defense counsel rendered ineffective assistance in violation of his Sixth Amendment rights by failing to challenge the sufficiency of the evidence on the "knowledge" element of the leaving the scene of an accident charge. Petition at 10.  Petitioner submits that "there was no proof that the driver of the truck ever saw the victim."  Memorandum at 16. Additionally, Petitioner argues that he was "highly intoxicated" so he would not have perceived what the other witnesses saw.  <u>Id.</u> at 18.

In Ground Six, Petitioner faults his defense attorney for failing to move for a judgment of acquittal on the DUI manslaughter

count.  Petition at 14.  Petitioner argues that the evidence was insufficient to establish that he caused the fatal accident.  Id.

Respondent argues that Petitioner has not shown the state decision rejecting his claim was contrary to or an unreasonable application of Strickland, or was a decision that resulted in an unreasonable determination of the facts in light of the evidence presented.  Response at 38-47.  Respondent further points out that Petitioner's defense attorney did in fact move for a judgment of acquittal on the DUI manslaughter count and the leaving a scene of an accident count, which the trial court rejected.  Exh. 10c at 257, 260.

The Court agrees with Respondent that Petitioner exhausted Grounds Four and Six to the extent he raised the claim in his Rule 3.850 motion as his third claim for relief.  Exh. 10 at 8.  The postconviction court denied Petitioner relief on the claim incorporating by reference the State's response as its own findings.  See Exh. 10g at 7 (order denying relief); see also Exh. 10 at 4-5 (State's Response to Rule 3.850).  Petitioner appealed the adverse result.  Exh. 11.

The Court finds that the State courts' decisions were neither contrary to, nor an unreasonable application of Strickland.  Nor did the postconviction court's decision amount to an unreasonable determination of the facts based on the evidence presented.

Although incorporating by reference the State's response in its order, the <u>Strickland</u> standard was the applicable standard applied to reject Petitioner's claims of ineffective assistance of counsel.

Initially, the record refutes Petitioner's claim that defense counsel rendered ineffective assistance in failing to move for a judgment of acquittal on the DUI manslaughter count. To the contrary, the record reveals that defense counsel moved for an acquittal on the DUI manslaughter and the leaving the scene of an accident counts. Exh. 10c at 257. In response to defense counsel's motion, the prosecutor reviewed the evidence presented. <u>Id.</u> at 258-260. The trial court then denied defense counsel's motion. <u>Id.</u> at 260. Thus, Petitioner is denied relief on Ground Six to the extent that the record clearly refutes Petitioner's claim that counsel was ineffective in failing to move for an acquittal on the DUI manslaughter count.

Turning to Ground Four, Petitioner argues that defense counsel rendered ineffective assistance by failing to move for a judgment of acquittal on the "knowledge" element of the leaving the scene of the accident count because no evidence was presented that the driver of the truck knew he hit the victim. To determine sufficiency of the evidence under Florida law, a court considers whether, "after viewing the evidence in the light most favorable

to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt." Johnston v. State, 863 So. 2d 271, 283 (Fla. 2003). Petitioner was convicted of leaving the scene of a crash involving death under a provision of the Florida Statutes that sets forth the following four elements: (1) Bacon was the driver of a vehicle involved in a crash; (2) Bacon knew or should have known that he was involved in a crash; (3) Bacon knew or should have known of the injury to or death of a person; and (4) (a) Bacon willfully failed to stop at the scene at the crash or as close to the crash as possible and remain there until had given "identifying information" to the injured person and to any police officer investigating the crash, or (b) Bacon willfully failed to render "reasonable assistance" to the injured person if such treatment appeared to be necessary or was requested by the injured person. State v. Mancuso, 652 So. 2d 370, 372 (Fla. 1995) ("criminal liability under section 316.027 requires proof that the driver charged with leaving the scene either knew of the resulting injury or death or reasonably should have known from the nature of the accident."); see also Exh. 10c at 340-341 (jury instructions). Significantly, what Petitioner fails to consider in Ground Four is that the knowledge element is satisfied when there is evidence supporting the finding that the defendant "knew or should have known" that he or she was involved

in the crash.   The trial judge instructed the jury accordingly.
See Exh. 10 at 340.

A review of the record confirms sufficient evidence was
presented to the jury to rationally support Petitioner Bacon's
conviction on this count.   The jury heard testimony from Maria
Elizabeth Hernandez, the victim's fellow cyclist, that the victim
had a flashing bright light attached to her bike.   Exh. 10c at 71.
Other drivers including Carlos Diaz and Emily Weston testified
that they noticed the bicyclists due to the flashing light on the
bike prior to the incident.   Id. at 85 (Weston); Id. at 109-110
(Diaz noting the flashing light on the bike in the bike lane).
Emily Weston further testified that she heard a loud thud.   Id.
at 85.   Specifically, Weston testified:

> And then, as I was driving, all of a sudden,
> I heard a really loud thud or whatever, and I
> still didn't really—nothing really registered
> at that time.   And then, all of a sudden, the
> truck was way ahead of me.   And we had been
> going the same speed.   So it was weird that
> he was that far ahead of me all of a sudden.
>
> So I kind of, you know, I was like, okay, I'm
> going to turn around and just make sure
> nothing happened. So I turned around.   I came
> back.   And when I pulled up, there was a body
> there.

Id.   Diaz also testified that after he saw the truck's right front
headlight blink out, the truck picked-up speed.   Id. at 110-111.
Officer Spina, the first officer to arrive at the crime scene,

testified that "[i]t looked like a bomb went off in the road. There was material scattered all over the road, paper, Styrofoam, plastic, lenses, car lens. It was just like someone emptied garbage in the middle of the road . . . There was an individual lying on the road in the bike path. Id. at 95. Spina also identified the people who were present at the scene when he arrived and testified that Diaz arrived within moments after his arrival. Id. at 95-98. Officer Paul Boliak, the officer who first arrived at Petitioner's house after running a slightly modified tag number search based on the tag Diaz provided, noted that the black pick-up truck was parked in the drive way and pulled up "pretty close" to the garage door or a wall. Exh. 10c at 140-141. The truck had damage to the right front side, where the headlight, corner marker lamp is and the front grille had significant damage with a lot of food, specifically pasta, mixed in the grille area and the head light area. Id. at 141-142. Officer Boliak testified he believed this was the suspect vehicle because there was also pasta at the crime scene because the victim was carrying a to-go box from the Italian restaurant where she worked. Id. at 142. Additionally, Boliak testified there were some scrapes and impact on the paint that looked like the truck had hit a bicycle and a human body. Id. Thus, sufficient evidence was presented at trial that

Petitioner Bacon knew, or should have known, that the crash happened and that he did not stay at the scene.

Contrary to Petitioner's assertions, voluntary intoxication does not negate the knowledge element. Olguin v. State, 903 So. 2d 270 (Fla. 3d DCA 2005) (discussing voluntary intoxication is not a defense to leaving a scene of an accident involving death). Defense counsel cannot be deemed ineffective under Strickland for failing to make a specific argument about the knowledge requirement because such an argument would have been meritless when considering the evidence. Accordingly, Petitioner is denied relief on Ground Four.

**Ground Five**

Petitioner submits that "a state key witness . . . changed her testimony on a key fact." Petition at 12. Petitioner argues the "state court's denial of his newly discovered evidence claim was contrary to or an unreasonable application of clearly established law." Memorandum at 18. Specifically, Petitioner's roommate and girlfriend at the time, Dawn Clements, testified at trial as a rebuttal witness and denied driving Bacon's truck that night. Id. at 19. Clements also apparently testified that she had long hair, which she wore in a ponytail. Id. Later, however, Petitioner submits that Clements admitted that she provided false testimony about the length of her hair at trial. Id.

Respondent asserts that a newly discovered evidence claim does not constitute a sufficient ground for relief in a § 2254 petition. Response at 51. Respondent further argues that the claim is unexhausted and now procedurally defaulted because Petitioner failed to alert the State courts to the federal dimension of his claim. Id. In the alternative, Respondent addresses the merits of the claim and argues Clements' post-trial testimony that she was mistaken about her hair length is not the type of evidence that would produce an acquittal. Id. at 55.

The Court agrees that Ground Five is unexhausted and now procedurally defaulted to the extent Petitioner did not alert the state court to the federal dimension of his claim. See Exh. 9 at 14 (Rule 3.850 motion- fourth claim for relief); Exh. 11 at 26-27 (appellate brief on denial of Rule 3.850 motion). Instead, Ground Five was presented to the state court in terms of a violation of State law only, i.e. that such evidence would have produced an acquittal. Exh. 9 at 15-16. Petitioner has not shown cause, prejudice, or a fundamental miscarriage of justice to overcome the procedural default of Ground Five. Supra at pp. 25-26.

Turning to address the merits, Respondent is correct that a free-standing actual innocence claim based on newly discovered evidence is not a ground for federal habeas relief. Herrera v. Collins, 506 U.S. 390, 400-402 (1993); McQuiggin v. Perkins, ___

U.S. ___, 133 S. Ct. 1924 (2013) (discussing actual innocence gateway claim to excuse an otherwise barred petition under the AEDPA statute of limitations).  In McQuiggin, the Supreme Court cautioned "that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district that, in light of the evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  Id. (citations omitted).

"[F]ederal habeas courts sit to ensure individuals are not imprisoned in violation of the Constitution- not to correct errors of fact."  Herrera, 506 U.S. at 400.  Even if Petitioner could assert a free-standing actual innocence claim, a review of the evidence presented to the jury reveals that the jury made a rational decision to convict Petitioner.  Clements' testimony concerning the length of her hair would not have obliterated her testimony that she did not drive Petitioner's truck that night, or Diaz's 100% certain profile identification of Petitioner as the driver of the truck that hit the bicyclist on the night of the incident.  Petitioner's truck was undisputedly involved in a crash that evening.  The jury simply did not find Petitioner's testimony that he remained at home and did not drive his truck that evening credible.  Accordingly, Ground Five is denied on the merits in the alternative.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED** as to Grounds One, Two, Four, and Six for the reasons set forth herein.   Grounds Three and Five are **DISMISSED as procedurally barred** and in the alternative denied on the merits.

2.   The **Clerk of Court** shall terminate any pending motions, enter judgment accordingly, and close this case.

**CERTIFICATE OF APPEALABILITY AND**

**LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability on either petition.   A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA").   28 U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 184 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed

further", Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003)(citations omitted).  Petitioner has not made the requisite showing in these circumstances.  Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

     **DONE** and **ORDERED** in Fort Myers, Florida on this   28th   day of March, 2017.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: ftmp-1
Copies: All Parties of Record